## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. **GAYLE A. LOUGHRIDGE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **CIV-18-136-C** |
| | ) | |
| 1. **SANTA FE SOUTH SCHOOLS,** | ) | |
| **INC., f/k/a SANTA FE SOUTH** | ) | |
| **HIGH SCHOOL, INC.,** | ) | |
| 2. **CHRISTOPHER BREWSTER,** | ) | |
| **in his individual capacity as** | ) | |
| **Superintendent of Santa Fe South** | ) | |
| **Schools, Inc., and** | ) | |
| 3. **LANCE SEERIGHT, in his** | ) | |
| **individual capacity as Principal of** | ) | |
| **Santa Fe South Schools, Inc.,** | ) | |
| | ) | **Jury Trial Demanded** |
| **Defendants.** | ) | **Attorney Lien Claimed** |

## COMPLAINT

**COMES NOW** the Plaintiff, Gayle A. Loughridge, and for her Complaint against the

Defendants herein alleges and states as follows:

## PARTIES

1.      Plaintiff, Gayle A. Loughridge ("Plaintiff"), is an adult female residing in

Oklahoma County, Oklahoma;

2.      The Defendants are:

a.      Santa Fe South Schools, Inc. f/k/a Santa Fe South High School, Inc.

("Santa Fe South"), a charter school operating in Oklahoma County, Oklahoma;

b.      Christopher Brewster ("Brewster"), in his individual capacity, who at

-1-

all times relevant hereto was the Superintendent of Santa Fe South; and

      c.    Lance Seeright ("Seeright"), in his individual capacity, who at all relevant times hereto was the Principal of Santa Fe South.

3.    At all relevant times hereto, the individual Defendants were employees of Santa Fe South Schools, Inc. and were acting under the color of their authority at all pertinent times hereto.

## JURISDICTION AND VENUE

4.    This action arises out of Plaintiff's employment with Santa Fe South.  Plaintiff asserts claims based on: (a) age discrimination and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"); (b) disability discrimination, failure to accommodate and retaliation in violation of the Americans with Disabilities Act ("ADA") and ADA Amendments Act ("ADAAA"); (c) interference with and retaliation for use or attempted use of medical leave under the Family Medical Leave Act ("FMLA"); (d) denial of her Fourteenth Amendment right to Equal Protection under federal and state law made actionable by 42 U.S.C. § 1983; (e) denial of her Fourteenth Amendment right to procedural and substantive Due Process under federal and state law made actionable by 42 U.S.C. § 1983; (f) denial of her right to freedom of speech under the First Amendment made actionably by 42 U.S.C. § 1983; (g) workers' compensation retaliation; (h) wrongful termination in the form of a *Burk* tort; (i) breach of contract; (j) unlawful interference with a contract; and (k) tortious interference with a prospective economic advantage.

5.    Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

6.    Defendants are all located in and/or doing business in Oklahoma County and can be served in such county.  Oklahoma County is located within the Western District for the United States District Courts of Oklahoma, wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

7.    To the extent required, Plaintiff exhausted her administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about June 23, 2017.  Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated January 17, 2018 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue. Plaintiff also submitted a Governmental Tort Claim Notice on or about June 23, 2017, which was received by Defendants on or about June 26, 2017.  Ninety (90) days have passed since the delivery of said tort claim, thus, said tort claim is deemed denied.  Plaintiff has timely filed her Complaint within one hundred eighty (180) days from the date said tort claims were deemed denied.

## STATEMENT OF FACTS

8.    Plaintiff, who was born in April 1955, dedicated nearly forty (40) years to

working in secondary education, both as an educator and administrator.

9.      After an already lengthy career, Plaintiff began her employment with Santa Fe South in or around January 2012 as a Social Studies Teacher.

10.     Throughout her employment, Plaintiff was an excellent teacher.  She received positive performance evaluations, including her last performance evaluation, which she was given on or about February 27, 2017.  Plaintiff was also highly regarded by her peers, as well as her students.

11.     Despite her stellar work record, on or about March 2, 2017, Seeright told Plaintiff that her employment contract for the 2017-2018 school year was not going to be renewed.

12.     And, on or about, March 6, 2017, Brewster stripped Plaintiff of her Teacher position, assigning her instead to various support-level tasks in isolation from all other employees.

13.     Brewster then wrongfully terminated Plaintiff on or about April 27, 2017.  And, her employment contract was not renewed for the 2017-2018 school year.

14.     Significantly, shortly before the above-described actions were taken, Plaintiff was required to be absent from work to seek medical treatment as a result of an on-the-job injury she sustained on or about September 22, 2015.

15.     Plaintiff also began complaining during the 2016-2017 school year about numerous health and safety hazards which created risk of harm to students and staff, as well

as complaining that students were not being required to meet scholastic eligibility requirements.

16.     More particularly, while at work on or about September 22, 2015, Plaintiff tripped over a cable intertwined through several picnic tables on school grounds, causing her to injure her right knee, left hand and shoulder.

17.     Plaintiff reported the injury to the Principal's office and advised that she was going to the Emergency Room ("ER") to seek treatment.

18.     On her way to the ER, Plaintiff spoke to a friend who advised that Plaintiff needed to obtain a workers' compensation form to provide to the ER.  As such, Plaintiff returned to school, explained the injury to Seeright and asked for a workers' compensation form.  However, Seeright told Plaintiff that Santa Fe South did not have workers' compensation.

19.     Having been told this, Plaintiff went to the ER without documentation.  The ER treated Plaintiff and referred her to her primary care physician, who told Plaintiff that Santa Fe South was required to have workers' compensation.  As such, Plaintiff again spoke with Seeright, as well as Brewster, about completing workers' compensation documentation. However, multiple weeks passed before Plaintiff was provided with any information or documentation.

20.     As a result of the injuries she sustained, Plaintiff was required to be absent from work to seek continuing medical treatment, including a series of surgeries.

21.     Plaintiff underwent surgery on her hand on or about February 15, 2016, requiring her to be absent from work for approximately two (2) weeks.  Despite this, at no time was Plaintiff offered or informed of her right to leave under the FMLA.

22.     On or about April 15, 2016, Plaintiff underwent knee replacement surgery, requiring her to be absent for approximately eight (8) weeks.  Plaintiff was still not offered or informed of her right to leave under the FMLA.

23.     In light of her conditions, Plaintiff was/is a qualified individual with a disability, in that, the injury to her hand substantially limited/limits her ability to perform one or more daily life activities, including *inter alia* her ability to lift, pull, grasp and perform certain manual tasks.  Likewise, the injury to her shoulder substantially limited/limits her ability to perform one or more daily life activities, including *inter alia* her ability to lift, push, pull, reach and perform certain manual tasks.  And, the injury to her knee substantially limited/limits her ability to perform one or more daily life activities, including *inter alia* her ability to stand, walk and bend.  Her conditions also impacted/impact her internal bodily processes, including, but not limited to her musculoskeletal system.  And, Plaintiff has a record of impairment and/or was regarded as having such an impairment.  At all relevant times, however, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

24.     On or about May 31, 2016, while Plaintiff was continuing to recover from knee surgery, Plaintiff was informed that her paycheck was being held, that in order to receive the

same she was required to meet with Brewster.

25.     During the meeting, Brewster told Plaintiff that he was not going to renew her employment contract for the 2016-2017 school year, because she had been absent too many days.

26.     However, the days Plaintiff missed were due to medical treatment she received as a result of her on-the-job injury (and were FMLA-covered absences).

27.     As such, Plaintiff complained that she did not believe Brewster could refuse to renew her contract under such circumstances.  And, Plaintiff's employment contract for the 2016-2017 school year was ultimately renewed.

28.     On or about August 2016, prior to the start of the 2016-2017 school year, Plaintiff's physician released Plaintiff to return to work, with the restriction that Plaintiff work on a flat, even surface.

29.     In light of such restriction, the flooring in the classroom in which Plaintiff was assigned to work needed to be repaired, in that, the flooring was made of thin plyboard, screwed to wooden footings.  The plywood, however, had come loose from the footings, causing the floor to be uneven, including gaps and holes in the floor and other trip hazards.

30.     At the start of the 2016-2017 school year, Brewster claimed the flooring had been fixed.  As such, Plaintiff returned to work.  However, upon returning, Plaintiff discovered that no repairs had been made.  And, Defendants did not initiate an interactive process to develop any reasonable accommodations that could be provided to Plaintiff.

31.     Despite this, Plaintiff continued working until in or around September 2016, at which time Plaintiff underwent surgery on her shoulder (which she had injured on-the-job).

32.     Plaintiff was required to be absent for approximately three (3) weeks in connection with the shoulder surgery.  Yet, again, Plaintiff was not offered or informed of her right to leave under the FMLA.

33.     When Plaintiff returned to work in or around October 2016, the flooring in her classroom had still not been fixed.

34.     Throughout the Fall/Winter 2016, Plaintiff continually complained to Brewster and Seeright.  Not only was the flooring uneven, which was inconsistent with her work restrictions, but the flooring had also deteriorated to the extent that a small animal, the size of a racoon or opossum, had gained entry, leaving feces scattered throughout the classroom.

35.     However, rather than fixing the flooring to meet Plaintiff's restrictions and prevent the animal's entry, large poison blocks were placed in Plaintiff's classroom which were accessible to Plaintiff's teenage students and emitted a toxic odor, affecting at least one student with a respiratory condition.

36.     In or around this same time period, Plaintiff also complained that students were not being required to meet scholastic eligibility requirements to participate in co-curricular activities; students with failing grades were being allowed to continue to participate in sports activities.  Moreover, Seeright pressured Plaintiff and other faculty members to sign waivers

allowing students with failing grades to participate in sports activities.  However, Plaintiff protested.

37.     Following this sequence of events, Plaintiff was called to meet with Seeright on or about Thursday, March 2, 2017, at which time Seeright told Plaintiff that her employment contract for the 2017-2018 school year would not be renewed.

38.     Seeright told Plaintiff that although her performance evaluations had been positive, he "wanted to go with a New England Patriots' model team; that he wanted new faces."  Not certain what Seeright meant by a "New England Patriots' model team," Plaintiff inquired about the matter and learned that the New England Patriots were used as the model for teams to follow because of their steady infusion of young players.  And, upon belief, other teachers over age forty were not given contracts for the 2017-2018 school year because of their age.

39.     Gravely concerned that the well-being of her students would be overlooked upon her departure, particularly considering her complaints of health and safety hazards had already been repeatedly ignored, Plaintiff contacted the press on or about March 2, 2017.

40.     The following day (i.e., on or about Friday, March 3, 2017), Plaintiff provided the press with an interview during her duty-free lunch period, as well as copies of pictures of the deplorable conditions in which her students were expected to learn, including pictures of the holes in her classroom floor, as well as the animal feces and poison blocks.

41.     Following the interview, completed about ten (10) minutes before the end of

her lunch break, Plaintiff returned to her classroom, whereupon she was met by Brewster, who angrily demanded Plaintiff "get [her] things and get out," that she painted Santa Fe South in an bad light.

42.     Brewster told Plaintiff to resign, otherwise she was to report to the Administrative Building on Monday morning, i.e., March 6, 2017, at 7:30 a.m.

43.     Plaintiff responded that she was not resigning, to which Brewster replied that Plaintiff had to leave campus, and that she could get her classroom equipment and supplies after school hours.   As such, Plaintiff understood she was being terminated from her employment.

44.     Brewster then escorted Plaintiff across campus to her car, with 100 or more students watching, in addition to Teachers and staff, damaging Plaintiff's reputation and causing Plaintiff emotional distress.

45.     Thereafter, on or about Monday, March 6, 2017, as instructed, Plaintiff reported to the Administration Building, whereupon, Brewster issued Plaintiff a written document, entitled "Ms. Loughridge duties – District reassignment March 6, 2017 - May 27, 2017."

46.     The duties outlined therein were support-level tasks, such as compiling a comprehensive history of Santa Fe South Schools, organizing and compiling archives, and filing.   Plaintiff was also assigned a work-station which isolated her from all other staff.

47.     In addition, Brewster began repeatedly nitpicking Plaintiff about her teaching

certificate, telling Plaintiff that her teaching certificate had expired.  Yet, a number of the Teachers at Santa Fe South were working under expired teaching certificates, and Brewster did not treat them in the same fashion.  Moreover, Plaintiff had a lifetime teaching certificate.

48.     Brewster also began monitoring Plaintiff's social media posts, chastising Plaintiff for posting a picture of a bouquet of flowers her family had sent, telling Plaintiff that she could not use social media during work hours.  However, Plaintiff posted the picture during her lunch break.  And,  Brewster did not treat Plaintiff's younger and/or non-disabled counterparts in the same fashion.

49.     Brewster also began repeatedly questioning Plaintiff about time she missed from work.  However, the work time Plaintiff missed was to seek continuing medical treatment for the on-the-job injuries she sustained.  And, Plaintiff provided the proper notice and documentation prior to the work time she missed. Yet, again Plaintiff was not offered FMLA.

50.     In or around March 2017, Plaintiff complained to Brewster that she believed she and other older employees, as well employees who suffered from medical conditions were being forced out.  Plaintiff told Brewster of Seeright's comment about wanting to follow the "New England Patriots' model team," and that she believed she and other Teachers including *inter alia* Teri Coles were targeted for termination.

51.     Ultimately, on or about April 27, 2017, Brewster terminated Plaintiff, telling her that she was being relieved from all duties.  This was so despite the fact that the

reassignment notice that Brewster issued her was through May 27, 2017. Moreover, Plaintiff's 2016-2017 contract did not expire until June 30, 2017. And, pursuant to the employment contract entered into between Plaintiff and Santa Fe South, Plaintiff's employment could only be terminated for certain enumerated reasons, none of which applied in Plaintiff's termination.

52.    Without reason, notice or an opportunity to be heard, Plaintiff was fired and not re-employed for 2017-2018 school year.

53.    Upon information and belief, Plaintiff was replaced by a significantly younger, non-disabled individual.

54.    Since her termination, Plaintiff has applied for other Teacher positions for which she was qualified. However, Plaintiff was not hired for such positions. Upon information and belief, Plaintiff has been denied employment in such positions based on negative information provided by Defendants. In fact, months after Plaintiff's termination, one of Plaintiff's former co-workers said comments were being made that Plaintiff had given Santa Fe South a bad name.

55.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

## COUNT I: ADEA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

56.     This Count is brought against Santa Fe South.

57.     The matters alleged above constitute violations of the ADEA in the form of age discrimination and retaliation.

58.     Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, she was over the age of forty (40), was qualified for her job, was discharged, and her position was not eliminated.  Moreover, upon information and belief, Plaintiff was also replaced by a significantly younger individual.

59.     Plaintiff is also entitled to relief for retaliation because Plaintiff engaged in protected opposition to age discrimination; she suffered an adverse action subsequent to the protected activity; and a causal link exists between the protected activity and the adverse action.

60.     As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991.  Plaintiff is also entitled to liquidated damages based on Defendant's willful misconduct.

## COUNT II: ADA/ADAAA

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

61.     This Count is brought against Santa Fe South.

62.     The matters alleged above constitute discrimination based on a disability, a record of a disability and/or perceived disability in violation of the ADA and ADAAA.  The

matters alleged above also constitute violations of the ADA and ADAAA for failure to engage in an interactive process to develop reasonable accommodations; failure to provide reasonable accommodations and retaliation for having requested reasonable accommodations.

63.     More specifically, Plaintiff was a qualified individual with a disability, in that, she suffers from physical impairments, described above, which substantially limit her ability to perform one or more major life activities as set forth above.  Further, Plaintiff's disability impacts one or more of her internal bodily processes, as shown herein.  And, Plaintiff had a record of a disability and was regarded as disabled because she had an actual or perceived impairment; that impairment was neither transitory nor minor; and Defendants were aware of and perceived the impairment at the time Plaintiff was terminated.

64.     Despite said impairments, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

65.     Plaintiff was terminated under circumstances giving rise to an inference of discrimination.  Moreover, Defendant failed to engage in an interactive process in an effort to develop reasonable accommodations that could be provided to Plaintiff and failed to provide Plaintiff with reasonable accommodations.  And, Plaintiff is further entitled to relief because she engaged in a protected activity (requesting reasonable accommodations in the form of *inter alia* time off and being permitted to work on an flat, even surface), suffered adverse actions thereafter, and a causal connection exists between her requests and the

adverse actions.

66.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered

lost earnings, past and future, emotional distress and other equitable and compensatory

damages as allowed by the Civil Rights Act of 1991.

### COUNT III: FMLA

For her third cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

67.     This Count is brought against all Defendants.

68.     The matters alleged above constitute interference with and retaliation for

Plaintiff's use or attempted use of medical leave in violation of the FMLA.

69.     Plaintiff was entitled to medical leave because she worked for Defendant Santa

Fe South, an entity with more than 50 employees within a 75 mile radius of Plaintiff's work

site for more than one (1) year and for more than 1,250 hours within the one year prior to her

need for leave.

70.     Plaintiff suffered from a serious health condition, as described herein, requiring

continuing treatment by health care providers.

71.     Defendants interfered with Plaintiff's rights under the FMLA by failing to

notify Plaintiff of her FMLA rights and engaging in acts intended to have a chilling effect

on Plaintiff's use of FMLA, including *inter alia* telling Plaintiff that her employment contract

would not be renewed for the 2016-2017 academic year because she missed too many days

of work, which were FMLA-covered.

72.     Defendants also retaliated against Plaintiff for her use of FMLA leave by *inter alia* removing her duties, terminating Plaintiff and refusing to renew Plaintiff's employment contract for the 2017-2018 academic year.  Defendants' actions were taken in response to Plaintiff's exercise of rights under the FMLA.

73.     As a direct and proximate result of Plaintiff's willful conduct, Plaintiff suffered injuries and is entitled to recovery of all damages or other equitable relief allowed by the FMLA, including but not limited to, lost wages (past and future), liquidated damages, attorneys' fees and costs.

## COUNT IV: Fourteenth Amendment Equal Protection

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

74.     This count goes against all Defendants.

75.     The individual Defendants are/were public employees at all relevant times hereto whose actions were made possible through the use and misuse of their authority as public employees.  The individually-named Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to equal protection. Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

76.     Plaintiff's Fourteenth Amendment constitutional rights were clearly established

at the time of the actions in question.  The actions of the Defendants were in deliberate indifference to the constitutional rights of Plaintiff.  Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

77.     The actions listed above have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

78.     To the extent that the actions of the Defendants are deemed willful or deliberately indifferent, then punitive damages are available, and should be assessed against each such person.

**COUNT V: Fourteenth Amendment Procedural and Substantive Due Process**

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

79.     This Count goes against all Defendants.

80.     The individual Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to procedural and substantive due process.

81.     The matters alleged above were in violation of Plaintiff's Fourteenth Amendment rights to procedural due process which was clearly established at the time of the actions in question. The actions of the Defendants were in deliberate indifference to the constitutional rights of Plaintiff.  Therefore, the individually-named Defendants are liable for

the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

82.     The matters alleged above represent a violation of Plaintiff's rights under the Fourteenth Amendment, *inter alia*, which have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

83.     To the extent that the actions of any individual are deemed willful or deliberately indifferent, then punitive damages are available and should be assessed against each such person.

## COUNT VI: First Amendment Violation

For sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

84.     This count goes against all Defendants.

85.     The individual Defendants were acting under the color of their authority in a manner which deprived Plaintiff of her constitutional right to the freedom of speech.

86.     The matters alleged above were in violation of Plaintiff's First Amendment right to the freedom of speech which was clearly established at the time of the actions in question.  Plaintiff's comments as stated herein constituted comments on a matter of public concern.  The actions of the Defendants were in deliberate indifference to the constitutional rights of Plaintiff.  Therefore, the individually-named Defendants are liable for the actions taken in violation of such rights in accordance with 42 U.S.C. §1983.

87.     The matters alleged above represent violations of Plaintiff's rights under the

First Amendment, *inter alia*, which have caused a physical, mental and emotional injury to Plaintiff in an amount to be determined by the jury.

88.     To the extent that the actions of any individual are deemed willful or deliberately indifferent, then punitive damages are available and should be assessed against each such person.

## COUNT VII:  Workers' Compensation Retaliation

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

89.     This Count is brought against Defendant Santa Fe South.

90.     The matters alleged above constitute retaliation in violation of the Oklahoma Administrative Workers' Compensation Act.

91.     Plaintiff sustained a job-related injury for which she could assert a claim for benefits under the Administrative Workers' Compensation Act.  And, Plaintiff received medical treatment for such injury.  Defendant had knowledge of Plaintiff's work-related injury.  And, Plaintiff was consequently fired.

92.     As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

93.     Defendant's actions were willful, wanton and/or conducted in a reckless disregard of Plaintiff's rights, thereby entitling Plaintiff to punitive damages.

## COUNT VIII: *Burk* Tort

For her eighth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

94.     This Count is brought against Defendant Santa Fe South.

95.     The acts described above constitute a violation of Oklahoma's public policy, which prohibits wrongful termination and retaliation against whistle-blowers for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

96.     More particularly, Plaintiff was wrongfully discharged from her employment in retaliation for exercising her right to engage in Free Speech and for having acted consistently with a clear and compelling public policy to protect children as articulated in this state's decisional and statutory law, codified in *inter alia* Okla. Stat. tit. 10A § 1-1-102, *et seq.* (making clear that it is the policy of this state to provide for the protection of children threatened by the conduct of persons responsible for the health, safety and welfare of such children).

97.     Plaintiff has suffered injuries and is entitled to recover all damages or other relief allowed by state law, including, but not limited to, lost wages (past and future), emotional distress damages, punitive damages, costs and attorney fees.

## COUNT IX: Breach of Contract

For her ninth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

98.     This Count is brought against Defendant Santa Fe South.

99.     Plaintiff and Defendant Santa Fe South entered into an employment contract.

100.    Pursuant to the terms of the said contract, Plaintiff could only be terminated and denied annual renewal of the contract based on certain enumerated grounds.

101.    Defendant Santa Fe South breached the contract by wrongfully terminating Plaintiff and refusing to renew her employment contract on grounds not enumerated in the contract.

102.    The contract entered between Plaintiff and Defendant Santa Fe South also contained the implied covenant that each party would act in utmost good faith and deal fairly with the other performing the contract.

103.    Defendant Santa Fe South breached the contract by failing and refusing to deal with Plaintiff fairly and in good faith, denying Plaintiff due process and imposing severe sanctions on her as described herein as a punishment for engaging in protected activity.

104.    As a direct and proximate result of Defendant's breach, Plaintiff has suffered damages and is entitled to recover all damages permitted by state law.

## **COUNT X: Tortious Interference**

For her tenth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

105.    This Count goes against the individual Defendants.

106.    The acts above-described constitute unlawful tortious interference with a contractual/employment relationship.  Defendants' actions were malicious and caused an actual harm to Plaintiff's employment relationship with Defendant Santa Fe South. Defendants had no justification, excuse, or privilege for such interference.

107.    As a result, Plaintiff is entitled to all damages allowed by state law.

### COUNT XI: Interference with Prospective Economic Advantage

For her eleventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

108.    This count goes against the individual Defendants.

109.    The acts above-described constitute unlawful interference with Plaintiff's prospective economic advantage.

110.    Plaintiff had a reasonable expectation for profit in her employment with Defendant Santa Fe South.

111.    Defendants had knowledge of this relationship and/or expectancy.

112.    Defendants intentionally induced or caused a breach Plaintiff's expectancy.

113.    Such breach resulted in damage to Plaintiff.

114.    As a result, Plaintiff is entitled to all damages allowed by state law.

### REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court enter judgment in favor of the

Plaintiff and against the Defendants and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS <u>13th</u> DAY OF FEBRUARY, 2018.**

s/Jana B. Leonard
**JANA B. LEONARD, OBA #17844**
**SHANNON C. HAUPT, OBA #18922**
**LAUREN W. JOHNSTON, OBA #22341**
**LEONARD & ASSOCIATES, P.L.L.C**
**8265 S. WALKER**
**OKLAHOMA CITY, OK 73139**
**(405) 239-3800 [TELEPHONE]**
**(405) 239-9801 [FACSIMILE]**
**leonardjb@leonardlaw.net**
**haupts@leonardlaw.net**
**johnstonlw@leonardlaw.net**

**JURY TRIAL DEMANDED**
**ATTORNEY LIEN CLAIMED**